Heather LOWTHER, a minor by her parent and natural guardian, and Ann Lowther, in her own right, Appellee,

v.

ROXBOROUGH MEMORIAL HOSPITAL and Roxborough Memorial Hospital Emergency Medical Services and Russell Stahl, M.D., and John N. Childs, III M.D., and Michael Rutberg, M.D., Appeal of John N. Childs, III, M.D., Appellants (at 460).

John N. Childs, III, M.D., Appellant (at 786),

v.

Heather Lowther, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 15, 1998.
Filed Sept. 10, 1999.

Roseann L. Brenner, Philadelphia, for John N. Childs, III, M.D.

Dale G. Larrimore, Philadelphia, for Heather Lowther.

Before KELLY, J., EAKIN, J., and OLSZEWSKI, J.

KELLY, J.:

¶ 1 Appellant, John N. Childs, III, M.D., has filed an appeal at No. 460 Philadelphia 1998, from the order of the Philadelphia County Court of Common Pleas, dated December 15, 1997 and docketed December 22, 1997, which granted Appellees' Petition to Confirm Arbitration Award. We affirm.

¶ 2 In his second appeal at No. 786 Philadelphia 1998, Appellant challenges the order of the Philadelphia County Court of Common Pleas, dated February 17, 1998 and docketed February 18, 1998, which sustained Appellees' preliminary objections to Appellant's Declaratory Judgment action. We affirm.

¶ 3 The relevant facts underlying both appeals are concisely set forth in the trial court opinion as follows:

[Appellees] Heather Lowther and her mother, Ann, sued [Appellant] for medical malpractice alleging negligent treatment of Heather's appendicitis. The parties agreed to submit to [binding] arbitration and to this end, their attorneys signed an agreement to arbitrate

with ADR Options.[1] The agreement provided that ADR Options Rules of Procedure would govern the arbitration. Those rules provided that the rules of evidence and substantive law of the appropriate jurisdiction would apply.

The malpractice in question consisted of [Appellant] failing initially to diagnose Heather's acute appendicitis and then failing to order post-operative antibiotics after the removal of a ruptured appendix.

The arbitrator stated at the outset that the credibility of the witnesses was paramount and concluded that [Appellant]'s explanation for his failure to administer antibiotics did not comport with his notations in the medical records and discharge summary. The arbitrator stated that his conclusions were based on having inspected hundreds of medical records over the years in the course of his employment as an Assistant U.S. Attorney and U.S. Magistrate. This reasoning, [Appellant] contends, indicates that the arbitrator improperly considered facts not in evidence and is a basis for vacating the award....

(Trial Court Opinion, dated March 17, 1998 and docketed March 18, 1998, at 1–2).

¶ 4 We add the following procedural history relevant to these appeals. Arbitration was held on September 25, 1997. The Arbitrator rendered his decision on September 30, 1997.

¶ 5 On October 28, 1997, Appellant filed a separate Declaratory Judgment action, pursuant to 42 Pa.C.S.A. § 7531, seeking the court's declaration that the parties' agreement to arbitrate had been rendered void and unenforceable as a matter of law. In the Declaratory Judgment complaint, Appellant alleged that the arbitrator acted contrary to the arbitration rules in reaching his decision and rendering the award. Specifically, Appellant contended that the arbitrator chose to ignore

the evidence of record and relied instead upon records in unrelated matters, which he had previously reviewed in his capacity as a former prosecutor and Magistrate Judge. Therefore, according to Appellant, he was denied the benefit of his bargain to arbitrate and was entitled to declaratory relief in the form of voiding the arbitration agreement.

¶ 6 On November 3, 1997, Appellees filed a petition with the Court of Common Pleas to confirm the arbitration award. In Appellant's answer in opposition to Appellees' petition to confirm the arbitration award, Appellant raised the same claim as set forth in his Declaratory Judgment complaint.

¶ 7 The Common Pleas Court confirmed the arbitration award by order dated December 15, 1997 and docketed December 22, 1997. On January 13, 1998, Appellant filed a motion to reconsider the order confirming the arbitration award. On January 22, 1998, Appellant filed the appeal at No. 460 Philadelphia 1998 while his motion to reconsider the order confirming the arbitration was still pending.

¶ 8 On February 17, 1998, the trial court sustained Appellees' preliminary objections to Appellant's October 28, 1997 Declaratory Judgment action and dismissed it. The dismissal of Appellant's Declaratory Judgment action is the subject of his appeal at No. 786 Philadelphia 1998.

¶ 9 This Court denied Appellant's motion to consolidate the appeals. Instead, it directed the appeals to be listed consecutively for oral argument and disposition. Accordingly, we will separately address and dispose of the two appeals within this memorandum opinion.

### Appeal at No. 460 Philadelphia 1998

¶ 10 On appeal at No. 460 Philadelphia 1998, Appellant raises the following issues for our review:

---

1. Appellees originally filed their complaint in the Court of Common Pleas. Later, the parties agreed to arbitrate their dispute and Appellees removed the case from the trial list. The underlying dispute did not arise out of an insurance contract.

WHETHER THE [TRIAL] COURT ERRED IN CONFIRMING AN ARBITRATION AWARD AND APPLYING COMMON LAW ARBITRATION RULES WHERE THE PARTIES CONTRACTUALLY AGREED TO HAVE THEIR DISPUTE RESOLVED OUTSIDE THE COURT SYSTEM AND THE CONTRACT TO ARBITRATE IS BREACHED BY THE ARBITRATOR'S FLAGRANT VIOLATION OF THE ARBITRATION RULES CONTRACTUALLY AGREED [UPON] AND THE VERY BASIS OF THE AWARD IS IN CONTRAVENTION OF PENNSYLVANIA LAW?

WHETHER THE ARBITRATION AWARD BASED UPON AN ARBITRATOR'S CONDUCT DIRECTLY IN CONTRAVENTION OF PENNSYLVANIA LAW, AS WELL AS IN CONFLICT WITH THE RULES OF ARBITRATION CONTRACTUALLY AGREED UPON BY THE PARTIES IS ENFORCEABLE UNDER EITHER THE LAW OF CONTRACTS OR COMMON LAW ARBITRATION?

(Appellant's Brief at 3).

¶ 11 As a preliminary matter, the parties agree that, pursuant to their arbitration agreement, they waived their right to a trial by jury in favor of arbitration, the result of which to be final and binding on the parties. However, Appellant argues, the parties also agreed that Pennsylvania law would govern all evidentiary and legal issues. Appellant maintains that the arbitrator's award was based upon evidence outside the record in violation of Pennsylvania evidentiary law. Thus, Appellant states, the agreement to arbitrate was violated by the arbitrator's actions and is, therefore, void and unenforceable as against either party with respect to any resultant award.

¶ 12 Appellant further argues that the agreement to arbitrate contained no mention of the Pennsylvania Arbitration Act. Appellant concludes, therefore, that the parties' arbitration is not subject to **any** of the statute's provisions, including the provisions governing the enforcement of a common-law arbitration award. We disagree.

¶ 13 Chapter 73 of the Pennsylvania Judicial Code governs statutory, common law and judicial arbitration. 42 Pa.C.S.A. §§ 7301–7362. Sections 7301–7320 of Subchapter A apply to statutory arbitration proceedings and are known collectively as the Pennsylvania Uniform Arbitration Act ("UAA"). Sections 7341 and 7342 of Subchapter B apply to common law arbitration proceedings. Sections 7361 and 7362 apply to judicial arbitration proceedings, which include compulsory arbitration and voluntary arbitration. *Id.*

¶ 14 Whether an arbitration agreement is subject to the UAA (Sections 7301–7320 of Subchapter A) or common law (Sections 7341 and 7342 of Subchapter B) arbitration principles depends on whether the agreement is in writing and expressly provides for arbitration under the UAA. 42 Pa.C.S.A. § 7302(a). The general rule, set forth in this statutory provision, states:

§ 7302. **Scope of subchapter**

(a) **General rule.**—An agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter [Subchapter A] or any other similar statute....

*Id.* Pennsylvania law makes clear that, absent an express statement in the arbitration agreement, or a subsequent express or implied agreement by the parties, which calls for the application of the UAA statutory provisions in Subchapter A, an agreement to arbitrate is conclusively presumed to be at common law and subject to the provisions of Subchapter B at 42 Pa.C.S.A. §§ 7341, 7342. *Id.*; *Runewicz v. Keystone*

*Ins. Co.*, 476 Pa. 456, 383 A.2d 189 (1978). Likewise, absent an agreement for the application of the UAA provisions, the common law arbitration rules set forth in Subchapter B control the enforcement of an arbitration award. *Id.*

¶ 15 The arbitration agreement in the instant case provides in full as follows:

### ARBITRATION AGREEMENT AND STIPULATION

It is hereby stipulated by and between the parties that the above case is to be decided by a binding arbitration. The undersigned parties also agree that the arbitration will be final, binding and conducted under the current ADR OPTIONS, INC., Rules of Procedure which are enclosed.

Each party and participating attorney has disclosed any past or present relationship with the arbitrator, direct or indirect, whether financial, professional, social or any other kind. The arbitrator has also disclosed any past or present relationship with any party or attorney. It is understood that any doubt has been resolved in favor of disclosure.

The parties agree not to call the arbitrator or any employee or agent of ADR Options, Inc., as a witness or an expert in any pending or subsequent litigation as to any matter related to this arbitration. The parties will defend the arbitrator, ADR Options, Inc., and any employee or agent of ADR Options, Inc., from any subpoena from any party as to the subject of this arbitration. The arbitrator and ADR Options, Inc., and its employees or agents are not liable to any party for any act or omission in connection with this arbitration.

(*See* Exhibit "A" to [Appellees'] Response to New Matter of [Appellant's] Answer to [Appellees'] Petition to Confirm Arbitration Award; R.R. at 132a–33a.) The ADR Options' Rules of procedure, referenced in the first paragraph of the parties' arbitration agreement, in relevant part, provide:

●1 **Scope**    These rules, as in place at the time of proceeding, shall govern all arbitration proceedings in ADR Options. These rules may be modified or voided by agreement of all parties.

Rulings on legal issues are based on the principles of law which would be applicable if the case were heard in the appropriate court of public jurisdiction. This may be changed by agreement of all parties to the dispute.

\* \* \*

●4 **Proceedings**    Proceedings are either arbitrations or mediations.

Standard arbitrations are binding in nature and offer the opportunity to present evidence in a manner similar to a non-jury trial in the public courts. . . .

\* \* \*

●9 **Evidence**    Rules of Evidence of the appropriate Court of Public Jurisdiction shall apply unless otherwise agreed to by the parties. . . .

●10 **Substantive Law**    The law of the case shall be the substantive law of the appropriate jurisdiction. In the event of a dispute as to the applicability of substantive law, all parties shall submit briefs to the ADR Options neutral, who shall decide the appropriate law of the case.

\* \* \*

●13 **Findings**    All arbitration findings shall be in writing and signed by the ADR Options arbitrator issuing the findings. The decision is **final and binding** and thereon may be entered in a public court of appropriate jurisdiction. . . .

(*See* Exhibit "B" to Appellant's Complaint for Declaratory Judgment; R.R. at 356a–62a) (emphasis added).

■ ¶ 16 First, the parties' contract provided that the arbitrator's findings would be final and binding. The parties also proceeded according to Pennsylvania

substantive law and rules of evidence, as there was no explicit agreement to the contrary. Further, the arbitration agreement was in writing but contained no provision for application of the UAA. Finally, the agreement did not reserve any rights of appeal or provide any alternative procedure for review and/or enforcement of the arbitrator's decision. Thus, for the purposes of review, the arbitration award in this case is subject to the rules and provisions set forth in Subchapter B or common law arbitration. *See* 42 Pa.C.S.A. §§ 7302(a); 7341, 7342.

¶ 17 Appellant contends that even if the parties' arbitration agreement is governed by common law arbitration principles, the agreement should be vacated or modified due to an irregularity in the proceedings. (Appellant's Brief at 11).[2] Before we can address this issue, we must determine, as an additional preliminary matter, whether Appellant has waived his right to assail the arbitration award in this case.

¶ 18 Section 7342 of Subchapter B, Common Law Arbitration, in pertinent part, provides:

§ 7342. **Procedure**

\* \* \*

■ (b) **Confirmation and judgment.–**
On application of a party made more than 30 days after an award is made by an arbitrator under § 7341 (relating to common law arbitration) the court **shall** enter an order confirming the award and shall enter a judgment or decree in conformity with the order . . . .

42 Pa.C.S.A. § 7342(b) (emphasis added). This section has consistently been interpreted to require that any challenge to the

arbitration award be made in an appeal to the Court of Common Pleas by the filing of a petition to vacate or modify the arbitration award within thirty (30) days of the date of the award. *Id.*; *Hall v. Nationwide Mut. Ins. Co.*, 427 Pa.Super. 449, 629 A.2d 954 (1993), *appeal denied*, 537 Pa. 623, 641 A.2d 588 (1994); *Beriker v. Permagrain Products, Inc.*, 347 Pa.Super. 102, 500 A.2d 178 (1985). Specifically, a party must raise alleged irregularities in the arbitration process in a timely petition to vacate or modify an arbitration award. *See NCR Credit Corp. v. Dutchmaid Inc.*, 1 Pa. D. & C.4[th] 26 (1988).

¶ 19 In the instant case, the arbitration decision was rendered on September 30, 1997. Appellant failed to file a petition with the Court of Common Pleas to vacate or modify the arbitrator's award within thirty (30) days of the award. In fact, there is no petition to vacate or modify the award anywhere in the certified record of this matter.[3]

■ ¶ 20 Additionally, we reject any suggestion that the filing of a separate Declaratory Judgment action on October 28, 1997, under a new court term and number, served the same purpose as a petition to vacate or modify the arbitration award and constitutes substantial compliance with the statute. To challenge an arbitration award, the proper procedure requires the filing of a timely petition, alternatively called an "appeal," with the Court of Common Pleas, to vacate or modify the arbitration award. *See Hall, supra* ; *Beriker, supra* ; *NCR Credit Corp., supra.* The statute does not provide for any alternative procedure, such as a Declaratory Judgment action, to a petition to vacate or modify an arbitration award. Moreover, Appellant claims that he is not

---

**2.** We remind Appellant that it is the **arbitration award**, not the agreement, which may be subject to judicial vacation or modification in this context due to an irregularity in the proceedings.

**3.** On January 13, 1998, Appellant filed a motion to reconsider **the order confirming the**

**arbitration award.** This motion is not to be confused with a timely petition to vacate or modify the arbitration award pursuant to common law arbitration rules and procedure. Appellant's motion for reconsideration was still pending when Appellant filed this appeal.

challenging the arbitration award in his Declaratory Judgment action. Instead, Appellant claims that his Declaratory Judgment action challenges the underlying agreement to arbitrate. Under the circumstances of this case, we hold that Appellant's Declaratory Judgment action is not equivalent to and does not function as a petition to vacate or modify the arbitration award.

■ ¶ 21 Appellant also raised his objection to the arbitration process as a defense to Appellees' timely petition to confirm the award. This, too, was procedurally inadequate to preserve Appellant's challenge. *See* 42 Pa.C.S.A. § 7342(b); *Beriker, supra* (holding that party who wishes to raise objections to arbitration award, must do so within thirty (30) days of award, because after thirty days, trial court must confirm arbitration award upon application of either party); *NCR Credit Corp., supra* (holding that objections to arbitration award must first be raised in petition to vacate or modify award and cannot be established merely by raising objections as defenses to petition to confirm award). Appellees filed their petition to confirm the arbitration award on November 3, 1997, more than thirty (30) days after the date of the award. Thus, Appellant's objections were untimely when raised as defenses to Appellees' timely petition for confirmation, because the objections were raised, as defenses, beyond the thirty-day time limit for challenging the arbitration award. *See Beriker, supra.* Without an outstanding petition to vacate or modify the award, properly filed within thirty (30) days of the date of the award and prior to Appellees' petition to confirm, the trial court was required by statute to confirm the award. *See* 42 Pa.C.S.A. § 7342(b); *NCR Credit Corp., supra.* Thus, we conclude that the trial court correctly confirmed the arbitration award and we refuse to disturb its order.

■ ¶ 22 Moreover, had it been timely, Appellant's challenge to the arbitration award on the basis of an irregularity in the proceedings would warrant no relief. At common law, unless restricted by the agreement of the parties, the arbitrator is the final judge of all legal and factual questions. *Chervenak, supra.* A contrary position would defeat the purpose of arbitration proceedings as a quick and uncomplicated method of obtaining justice. *Id.*

■ ¶ 23 Section 7341 of Subchapter B, Common Law Arbitration, provides:

### § 7341. Common law arbitration

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa.C.S.A. § 7341. In a proper appeal from a common law arbitration award, the appellant must demonstrate by clear, precise and indubitable evidence that he was denied a hearing, or that fraud, misconduct, or some other irregularity on the part of the arbitrator, or the parties involved, caused an unjust, inequitable or unconscionable award. *Runewicz, supra*; *Chervenak, Keane & Co., Inc. (CKC Associates) v. Hotel Rittenhouse Assoc., Inc.*, 328 Pa.Super. 357, 477 A.2d 482 (1984); *Paugh v. Nationwide Ins. Co.*, 278 Pa.Super. 108, 420 A.2d 452 (1980).

In an arbitration proceeding, an irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself. *Press v. Maryland Casualty Co.*, 227 Pa.Super. 537, 540, 324 A.2d 403, 404 (1974). In *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 116, 299 A.2d 585, 589 (1973), our Supreme Court noted that:

It is possible to hypothecate [sic] an arbitration award which imports such bad faith, ignorance of the law and indifference to the justice of the result as to cause us to give content to the phrase "other irregularity" since it is the most definitively elastic of the grounds for vacatur.

In most cases where an irregularity is alleged, our appellate courts have denied relief. *See, e.g., Runewicz[, supra* ] (appellant alleged arbitrator's award contradicted insurance policy language; no irregularity even though award patently at odds with contract); *Hain v. Keystone Insurance Co.*, 230 [Pa.Super.] 456, 459–60, 230 Pa.Super. 456, 326 A.2d 526, 527 (1974) ("While damages granted in this case may have been at variance with the language of [the insurance policy], we do not believe that the award meets the *Fioravanti* criteria for vacating an arbitration decision.") *Compare Paugh* [, *supra* ] (irregularity found when plaintiffs kept pertinent testimony from arbitrators, therefore precluding arbitrators from fashioning award limiting plaintiffs' possible double recovery).

*Chervenak, supra* at 485.

¶ 24  Appellant claims that the arbitrator relied on evidence not presented by either party, in flagrant violation of Pennsylvania evidentiary law. Appellant takes issue with two segments of the arbitrator's written decision. The first segment states as follows:

I find from all of the evidence and from a close examination of all documents and the entire hospital record that there were not any antibiotics given to Heather pre-operation and that the statement in the dictated report was an afterthought that was intended to bolster Dr. Child's standing in the case.

(Arbitration Decision and Award of the Honorable Edwin E. Naythons, U.S.M.J. (Ret.) ¶ 4; R.R. 48a, ¶ 4). Appellant complains that this passage accuses him of fraud.

¶ 25  Appellant also takes issue with a second passage of the decision as follows:

In having inspected hundreds upon hundreds of hospital records, and reading as many surgical procedures over 28 years as an Assistant U.S. Attorney prosecuting 100–200 Medicare Fraud Defendants and as a U.S. Magistrate Judge, I have never seen antibiotic medication not identified if given; and always, it would be included in the body of the report because of its extreme importance to alert physicians and nurses who would need to be made aware of the antibiotic[']s identity.

(*Id.* ¶ 5). Appellant claims that this statement unequivocally shows the arbitrator's reliance upon the records in the other cases when forging his decision and award in this case. Appellant concludes that this reliance constitutes the irregularity that should defeat the arbitration award. We disagree.

¶ 26  Despite Appellant's position to the contrary, there is no evidence that the arbitrator actually referenced records in unrelated matters or considered evidence outside the record when deciding this matter. To the contrary, the arbitrator was measuring the evidence of record and Appellant's credibility in light of the record evidence. The arbitrator's decision makes clear the basis of his award in the following passage:

Furthermore, if antibiotic medication were given, there would have been some record of its dosage and whether it was given orally or through IV method. And its use should have been noted when dispensed from the pharmacy or other laboratory inventory because there would have to be a financial charge imposed by the Pharmacy for any antibiotic medication during surgery. And, any antibiotic use during surgery would be recorded by either surgical nurses or the anesthesiologist. **No record of any antibiotic appears in the record** produced by [Appellant], nor

have any billing records from Roxborough Memorial been shown with the antibiotic that was [allegedly] given on February 21, 1988, prior to surgery. Here, there is no corroboration from any source that such medication was used, whereas after surgery, two doses are noted of Cefoxitin, one gram I/V at 6:00 a.m. and 10:00 a.m.. Also nurses noted the giving of Tylenol # 3 ND Tylenol/Suppgrx per rectum on February 22 nd.

(Id. ¶ 6) (emphasis in original). Thus, the basis for the arbitrator's decision was that the record simply did not support Appellant's defense. We are convinced that, when read in proper context with the whole of his decision and award, the arbitrator's comments regarding his prior experience with medical records generally was simply meant to show his overall understanding of the importance of keeping accurate medical records. The arbitrator's decision was largely a credibility determination, which we cannot disturb. *See Chervenak, supra.*

¶ 27 We are mindful of the recent Pennsylvania Supreme Court decision in *Wojdak v. Greater Philadelphia Cablevision, Inc.*, 550 Pa. 474, 707 A.2d 214 (1998). In *Wojdak*, the limited partners challenged a third party's appraisal of the valuation of "put interests" in a partnership. The limited partners asserted that certain aspects of the valuation had been procured by "undue means" because the arbitrator had consulted with undisclosed investors in gathering information concerning the valuation. The Court held that the arbitrator's action of engaging in an *ex parte* investigation of the fair market value of the put interests with third parties constituted "undue means" under the Delaware Uniform Arbitration Act because the parties were not aware of the arbitrator's contacts with third-party investors until after the initial draft of the award had been circulated and the formal presentations by the parties had concluded. As a result, the Court reasoned, the limited partners were

deprived of their right to challenge the assumptions and opinions of the third-party investors upon whom the arbitrator had relied in determining the value of the "put interests." *Id.* at 493, 707 A.2d at 223.

¶ 28 We note that the *Wojdak* appeal was decided under Delaware law. Further, the limited partners raised their objections to the valuation process, *inter alia*, in a Petition to Vacate in Part the Award, timely filed in the Philadelphia County Court of Common Pleas, in compliance with the applicable Delaware statute. Most importantly, the *Wojdak* Court specifically stated, "There is a fundamental difference between an arbitrator relying upon its own professional experience and an arbitrator seeking the professional input of third parties." For these reasons, we conclude that the *Wojdak* decision does not enhance Appellant's position in the present case, because the arbitrator in this case did nothing more than rely on his own experience and common sense. Thus, even if Appellant had not waived his challenge to the arbitrator's award for failure to file a timely petition to vacate or modify the award, we would still conclude that Appellant's alleged irregularity does not mandate reversal. Accordingly, we affirm the trial court's order confirming the arbitration award in favor of Appellees.

¶ 29 Order affirmed.

**Appeal at No. 786 Philadelphia 1998**

¶ 30 On appeal at No. 786 Philadelphia 1998, Appellant raises the following issues for our review:

WHETHER THE [TRIAL] COURT ERRED IN SUSTAINING PRELIMINARY OBJECTIONS AND DISMISSING [APPELLANT]'S DECLARATORY JUDGMENT ACTION AS AN ATTEMPT TO RELITIGATE A PRIOR MATTER?

WHETHER THE [TRIAL] COURT ERRED IN APPLYING COMMON LAW ARBITRATION RULES TO A SITUATION WHERE PARTIES CONTRACTUALLY AGREED TO HAVE

THEIR DISPUTE RESOLVED OUTSIDE THE COURT SYSTEM AND THE CONTRACT TO ARBITRATE IS BREACHED BY THE ARBITRATOR'S FLAGRANT VIOLATION OF THE ARBITRATION RULES CONTRACTUALLY AGREED AND THE VERY BASIS OF THE AWARD IS IN CONTRAVENTION OF PENNSYLVANIA LAW?

WHETHER AN ARBITRATION AWARD BASED UPON AN ARBITRATOR'S CONDUCT DIRECTLY IN CONTRAVENTION OF PENNSYLVANIA LAW, AS WELL AS IN CONFLICT WITH THE RULES OF ARBITRATION CONTRACTUALLY AGREED UPON BY THE PARTIES IS ENFORCEABLE UNDER EITHER THE LAW OF CONTRACTS OR COMMON LAW ARBITRATION?

(Appellant's Brief at 3).

¶ 31 Appellant presents identical arguments in this appeal that the arbitrator acted contrary to the arbitration rules in reaching his decision and rendering the award. Specifically, Appellant contends that the arbitrator chose to ignore the evidence of record and relied instead upon records in unrelated matters, which he had reviewed in his capacity as a former prosecutor and Magistrate Judge. Therefore, according to Appellant, he was denied the benefit of his bargain to arbitrate, denied a fair hearing, was denied an unbiased and impartial hearing, and is entitled to a judicial declaration that the parties' agreement to arbitrate has been rendered void and unenforceable as a matter of law.

¶ 32 Appellant further contends that his Declaratory Judgment action is not an attempt to disguise an appeal from the arbitration award. Instead, Appellant maintains that this current action challenges the validity of the underlying agreement to arbitrate. We disagree.

█ ¶ 33 This Court will reverse the trial court's decision regarding preliminary objections if there is an error of law or

abuse of discretion. *Bocchicchio v. General Public Utilities Corp.*, 456 Pa.Super. 23, 689 A.2d 305 (1997).

> When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court. *Smith v. Weaver*, 445 Pa.Super. 461, 665 A.2d 1215 (1995). Under that standard, the court accepts as true all well-pled material facts set forth in the complaint along with all reasonably deducible inferences from those facts. *Turner v. Medical Center, Beaver, PA, Inc.*, 454 Pa.Super. 645, 686 A.2d 830 (1996), *appeal denied*, 548 Pa. 673, 698 A.2d 596 (1997).... Surmise and conjecture can play no part in the decision. *Smith, supra.* The court must be able to say with certainty that upon the facts averred, the law will not permit recovery. *Id.* Preliminary objections will be sustained only if they are clear and free of doubt. *Milliner v. Enck*, 709 A.2d 417 (Pa.Super.1998).

*Schuylkill · Navy v. Langbord*, 728 A.2d 964, 968 (Pa.Super. 1999).

█ ¶ 34 The grant or denial of a declaratory judgment is a matter lying within the sound discretion of the court of original jurisdiction. *Gulnac by Gulnac v. South Butler County School Dist.*, 526 Pa. 483, 587 A.2d 699 (1991). The purpose of awarding declaratory relief is to bring a final settlement to and make certain the rights or legal status of the parties. *Geisinger Clinic v. DiCuccio*, 414 Pa.Super. 85, 606 A.2d 509 (1992), *appeal denied*, 536 Pa. 625, 637 A.2d 285 (1993), *cert. denied*, 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 788 (1995). A declaratory judgment action cannot be used as a vehicle to determine rights in anticipation of events that may not occur, for consideration of moot issues, or for an advisory opinion that may prove to be purely academic. *Id.* Only where there is a real controversy, may a party obtain a declaratory judgment. *Id.* The presence of a real controversy indicating imminent and inevitable litigation coupled with a clear manifestation that the declara-

tion sought will be of practical value in ending the controversy are essential to obtaining relief by way of a declaratory judgment action. *Id.* Review of a declaratory judgment is likewise limited to determining whether the trial court committed an error of law or abuse of discretion. *Chambers v. Aetna Cas. and Sur. Co.,* 442 Pa.Super. 155, 658 A.2d 1346 (1995), *appeal denied,* 543 Pa. 707, 672 A.2d 303 (1996).

¶ 35 In the instant case, a careful review of Appellant's Declaratory Judgment complaint reveals that it is a collateral attack on the arbitration award. The complaint outlines the alleged irregularity in the proceedings, the arbitrator's alleged bias and partiality, and the alleged denial of a fair hearing. (*See* Complaint for Declaratory Judgment; R.R. at 343a–50a.) Each and every assertion set forth in the complaint is a claim that could and should have been raised in a timely petition to vacate or modify the award.

¶ 36 Having waived his right to challenge the arbitration award by failing to file a timely petition with the Court of Common Pleas, Appellant cannot be permitted to proceed further with the matter. The unappealed arbitration award is final and complete. The applicable appeal procedure cannot be circumvented by a subsequent Declaratory Judgment action, regardless of how Appellant characterizes his claim. Otherwise, the common law arbitration process contemplated by Pennsylvania law would be a sham. *See Chervenak, supra.*

¶ 37 We conclude, therefore, that the trial court properly sustained Appellees' preliminary objections to Appellant's Declaratory Judgment action. In light of the finality of the arbitration award, Appellant's issues are now moot. *See Schuylkill Navy, supra; Geisinger Clinic, supra.* Thus, on the facts averred, no declaratory relief is available to Appellant as a matter of law. Accordingly, we affirm the trial court's order sustaining Appellees' preliminary objections and dismissing with prejudice Appellant's Declaratory Judgment action.[4]

¶ 38 Order affirmed.

---

4. Due to our disposition of the issues in Appellant's companion appeal, we need not again address them.